Stephen B. Morris (126192)
**The Law Offices of Stephen B. Morris**
444 WEST C STREET, SUITE 300
SAN DIEGO, CA 92101
Telephone: 619-239-1300
Facsimile: 619-374-7082
Email: *morris@sandiegolegal.com*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALLISON PAPPAS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 16-cv-0612-MMA-JLB |
| Plaintiff, | **CLASS ACTION** |
| vs. | **FIRST AMENDED COMPLAINT FOR VIOLATION OF:** |
| CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation, | 1. Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; |
| Defendant. | 2. False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and |
| | 3. Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Allison Pappas ("Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Chipotle Mexican Grill, Inc., a Delaware corporation (hereinafter referred to as "Chipotle" or "Defendant"), and makes the following allegations based upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

# INTRODUCTION

1.      This is a class action brought by Plaintiff individually and on behalf of all other individuals similarly situated in California who purchased Chipotle food and beverage products ("Food Products") marketed, advertised, and/or sold by Defendant during the period from April 27, 2015 to the present (the "Class Period").

2.      Chipotle owns and operates a nationwide chain of casual Mexican fast-food restaurants that sell four main menu items: burritos, burrito bowls, tacos, and salads. Since 2009, Chipotle has marketed itself as serving "Food With Integrity," and sets itself apart from other fast-food chain competitors by claiming to serve locally-sourced produce, antibiotic and hormone free livestock raised in humane conditions, and produce farmed using environmentally-friendly techniques. Chipotle claims that "[w]ith every burrito we roll or bowl we fill, we're working to cultivate a better world."

3.      Chipotle has tailored its public image by marketing to healthy-lifestyle and environmentally conscious consumers who it knows are willing to pay premium prices for its food products because they align with the consumers' ethical eating choices. As part of this public image, beginning in 2013, Chipotle began listing its food ingredients on its website, indicating whether an ingredient was organic, locally produced, had a preservative, or contained a genetically modified organism ("GMO").

4.      The potential health impact of GMOs has been the subject of much scrutiny and debate within the food and science industries, but Chipotle knows customers attach an unhealthy, negative perception towards them. Capitalizing on this perception, in April 2015, Chipotle took the unprecedented step among fast-food restaurants by launching a multi-media publicity campaign touting that it was the "first national company" in the

food industry to serve a menu devoid GMOs.[1] Chipotle has advertised its GMO-free message on television commercials, billboards, social media, storefronts, and in-store signage. Chipotle represents to customers that, if they eat at Chipotle, they will not be eating GMOs. Chipotle's marketing campaign has been a resounding success for the company.

5. But as Chipotle told consumers it was "G-M-Over it," the opposite was true. In fact, the ingredients in Chipotle's menu were not free of GMOs during the class period. Among other things, Chipotle serves, or served, GMO-containing flour and corn tortillas, and, additionally, used GMO soy products in its cooking oils, plus meat products that come from animals which feed on GMOs, including corn and soy. Chipotle's tacos and burritos are also usually served with sour cream and cheese from dairy farms that feed animals with GMOs. While Chipotle knows that its menu contains, or contained, ingredients with GMOs, or contains or contained items from animals raised on GMOs, it has taken no meaningful steps to clarify for in-store consumers its actual practices relative to GMOs.

6. As a result of Chipotle's conduct, customers like Plaintiff Pappas have been deceived into buying Chipotle's food, or paying more for Chipotle products than they would have otherwise paid. Accordingly, Plaintiff brings a proposed class action against Chipotle arising from Chipotle's deceptive conduct that seeks damages, restitution and/or disgorgement of Chipotle's profits, and other equitable relief.

///

---

[1] See Food With Integrity, G-M-Over It, Chipotle, http://chipotle.com/gmo (last accessed March 3, 2015).

## PARTIES

7.      Plaintiff Allison Pappas is a resident of San Diego, California. She purchased Chipotle's Food Products, relying on Defendant's "Food With Integrity" campaign, believing that its food products contained "Only NON-GMO ingredients" as a result of Defendant's ad campaign. Plaintiff in particular relied on the representation that Defendant's Food Products did not contain any GMO ingredients, having seen or heard advertisements, including all of the in-store signage that Chipotle used "only NON-GMO ingredients," in deciding to make purchases at Chipotle. Prior to Chipotle's "Food With Integrity" campaign Plaintiff never made purchases at Chipotle, and specifically chose to purchase food at the restaurant for the first time on May 26, 2015 as a result of ads regarding the use of "only NON-GMO ingredients" in the campaign.  Plaintiff would not have purchased from Defendant at the price she had paid, or purchased it at all, had she known that the representations made concerning Defendant's Food Products were materially false and misleading.  At no time prior to purchasing any food from Chipotle did Plaintiff review Chipotle's website.

8.      Defendant Chipotle Mexican Grill, Inc., is a Delaware corporation headquartered in Denver, Colorado. Founded in 1993, Chipotle develops and operates fast-casual and fresh Mexican food restaurants. As of December 31, 2014, Chipotle has over 1,780 restaurants throughout the United States, with 325 restaurants in California alone.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the

matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendant. See 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over Defendant because Defendant is authorized to do business and does conduct business in California, has specifically marketed, advertised, and sold its Food Products in California, and has sufficient minimum contacts with this state and/or sufficiently avail itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

11.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant does business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its Food Products in this District, and a significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in or emanated from this District.

12.    Pursuant to Civil L.R. 3-2(c), an intra-district assignment to the San Diego Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Plaintiff purchased Food Products from a Chipotle restaurant in San Diego County.

## **FACTUAL ALLEGATIONS**

### **I.    Genetically Modified Organisms**

13.    For thousands of years, humans have domesticated plants, such as wheat and maize, and animals, including cattle, dogs, and sheep, to develop desired genetic traits

through a process of selective breeding (also known as artificial selection).[2] Selective breeding differs from traditional breeding, which involves the exchange of large, unregulated chunks of their genomes and can lead to unpredictable and unwanted traits in the offspring. However, selective breeding takes time and may require multiple generations of crossing genes to produce the desired genetic trait (such as bigger, better tasting corn kernels).[3]

14.     With advances in technology, new techniques have been applied that obtain faster results in getting desired genetic traits. Now, genes that express a desired trait can be physically moved or added to a new organism to enhance the trait in that organism.[4] Also known as genetic engineering or genetic modification,[5] this technique allows new traits to be introduced one at a time without unwanted complications from extra genes and extensive crossbreeding.[6] A GMO, also known as a transgenic organism, is the term used for any organism whose genetic material has been altered using these genetic engineering techniques.

15.     Today, GMOs are used in biological and medical research, production of pharmaceutical drugs, experimental medicine, and agriculture.[7]  Genetically modified crops are engineered to, among other things, resist certain pests, diseases, or

---

[2] See Genetically modified organism, Wikipedia, https://en.wikipedia.org/wiki/Genetically_modified_organism (last accessed Aug. 7, 2015).
[3] See Genetically Modified Organisms (GMO), University of California San Diego, http://www.bt.ucsd.edu/gmo.html (last accessed Aug. 7, 2015).
[4] Id.
[5] See GMO Education, Institute for Responsible Technology, http://www.responsibletechnology.org/gmo-education (last accessed Aug. 7, 2015).
[6] http://www.bt.ucsd.edu/gmo.html.
[7] https://en.wikipedia.org/wiki/Genetically_modified_organism.

environmental conditions, reduce spoilage, increase size and yield, taste and look better, and resist chemical treatments. As of 2010, 10% of the world's croplands are planted with genetically modified crops.[8] In the United States, as of 2015, 94% of the planted area of soybeans, 95% of cotton, and 92% of corn were genetically modified varieties.[9] Other common genetically modified crops include alfalfa, canola, papaya, sugar beets, zucchini, and yellow summer squash.[10]

16.     Since 1996, farmers in animal agriculture (including poultry) have optimized GMOs by feeding genetically modified grains (corn) and oilseeds (soybean) to their flocks and herds.[11] Because more than 80% of the corn and soybeans in the United States are raised from genetically modified seeds, almost all corn and soybean used in conventional livestock and poultry feed is genetically modified.[12] In addition, other genetically modified crops such as cotton, canola, sugar beets, and alfalfa are commonly used in animal feed.[13]

---

[8] Id.

[9] Adoption of Genetically Engineered Crops in the U.S., United States Department of Agriculture Economic Research Service (July 9, 2015), http://www.ers.usda.gov/data-products/adoption-ofgenetically-engineered-crops-in-the-us.aspx.

[10] See What is GMO? Agricultural Crops That Have a Risk of Being GMO, Non-GMO Project, http://www.nongmoproject.org/learn-more/what-is-gmo/ (last accessed Aug. 7, 2015).

[11] See Genetically Modified Organism (GMO) Use in the Chicken Industry, National Chicken Council (July 5, 2013), http://www.nationalchickencouncil.org/genetically-modified-organismgmo-use-in-the-chicken-industry/.

[12] Id

[13] See Ryan Beville, How Pervasive are GMOs in Animal Feed?, GMO Inside Blog (July 16, 2013), http://gmoinside.org/gmos-in-animal-feed/.

17.     While the safety or health impact of food and other goods derived from genetically modified crops has been, and continues to be, hotly debated,[14] according to a January 29, 2015 Pew Research Center survey, only 37% of the general public believes that "it is generally safe to eat genetically modified (GM) foods."[15]

18.     Because the safety (or benefit) of eating genetically modified foods has been questioned, and the perception that GMOs are unnatural and harm the environment has persisted, consumers who are health and environmentally conscious have sought products that are non-GMO. As a result, companies have created a $5 billion (and fast growing) market for products without GMOs[16] and consumers are willing to pay the higher costs associated with non-GMO products due to the negative perception of genetically modified foods and because GMO-free ingredients are often more expensive.[17]

## II.     Chipotle's Advertising and Marketing

### A.     Chipotle's "Food With Integrity" Campaign

---

[14] Compare, e.g., European Commission, A Decade of EU-funded GMO Research (2001-2010), http://ec.europa.eu/research/biosociety/pdf/a_decade_of_eu-funded_gmo_research.pdf (last accessed Aug. 7, 2015) ("The main conclusion to be drawn from the efforts of more than 130 research projects, covering a period of more than 25 years of research, and involving more than 500 independent research groups, is that biotechnology, and in particular GMOs, are not per se more risky than e.g. conventional plant breeding technologies."), with GMO Facts, Non GMO Project, http://www.nongmoproject.org/learn-more/ (last accessed Aug. 7, 2015) ("Meanwhile, a growing body of evidence connects GMOs with health problems, environmental damage and violation of farmers' and consumers' rights.").

[15] Cary Funk and Lee Rainie, Public and Scientists' Views on Science and Society, Pew Research Center (Jan. 29, 2015), http://www.pewinternet.org/files/2015/01/PI_ScienceandSociety_Report_012915.pdf.

[16] Mary Beth Schweigert, GMO Free Comes at a Price, Gluten-Free Living (Nov. 25, 2014), http://www.glutenfreeliving.com/gluten-free-lifestyle/non-gmo/gmo-free-comes-at-price/.

[17] Id.

19.     Since 2009, Chipotle has marketed, sold, and prided itself on serving "Food With Integrity,"[18] promoting its brand and Food Products as a leader in healthier food and ethical farming practices. In addition to print, outdoor, transit and radio ads, Chipotle conducts online advertising and strategic promotions to demonstrate its "Food With Integrity" mission. Chipotle's video and music programs, events and festivals such as its "Cultivate Festival," and digital, mobile, and social media campaigns (such as its three-minute "The Scarecrow" and two-minute "Back to the Start" Youtube.com campaigns) have permitted Chipotle to differentiate itself from other fast-food companies as the industry leader in being health and environmentally conscious. In 2014 alone, Chipotle spent over $57 million in advertising and marketing costs in the United States.

20.     Chipotle claims that it is "all about simple, fresh food without artificial flavors or fillers," that it serves "more local produce than any restaurant company in the U.S.," that it is "serious about pasture-raised animals that have room to be animals," and that there is "no place for nontherapeutic antibiotics and synthetic hormones on the farms that produce" Chipotle's ingredients. Chipotle's "Food with Integrity" principle purportedly led it to stop serving pork in some of its restaurants after it found that suppliers were not meeting its pork production standards.[19]

---

[18] See Day After Day, We're Committed, Chipotle, http://chipotle.com/food-with-integrity (last accessed Aug. 25, 2015).
[19] Hayley Peterson, Chipotle workers are trained to give you smaller portions of these 7 ingredients, Business Insider (Feb. 25, 2015, 11:46 AM), http://www.businessinsider.com/chipotles-critical-seven-ingredients-2015-2.

21.     Beginning in March 2013, Chipotle released a comprehensive list of all of its ingredients on its online website, which was reportedly a first among fast-food chains.[20] When Chipotle first listed its ingredients online, 12 of the 24 ingredients listed contained the presence of GMOs, including, but not limited to, Chipotle's tortillas, rice, salad dressing, potato chips, and its meat products.[21] Chipotle stated, however, that it was committed "to remov[ing] the GMOs from" its' Food Products "to the fullest extent possible."[22]   But, this information was never disclosed in Chipotle's stores, or in its advertising campaigns, and was, instead, specifically concealed, from the public in those forums.

**B.     Chipotle's April 2015 "GMO Free" Announcement**

22.     On or about April 27, 2015, Chipotle announced, and began advertising, that it would only prepare food with ingredients that are free of GMOs.[23] Steve Ells, Chipotle's founder and co-chief executive, stated that, "Just because food is served fast

---

[20] See A "Food Babe Investigates" Win – Chipotle Posts Ingredients, Food Babe, http://foodbabe.com/2013/03/24/a-food-babe-investigates-win-chipotle-posts-ingredients/ (last accessed Aug. 9, 2015); see also Joe Satran, Chipotle Starts Labeling GMO Ingredients on Website Menu, Huff Post Green (June 18, 2013, 1:57 PM), http://www.huffingtonpost.com/2013/06/18/chipotle-gmo_n_3460402.html; Steve Ells, Chipotle Is Saying No To GMOs. Here's Why., Huff Post Food for Thought (Jan. 28, 2014, 8:48 AM), http://www.huffingtonpost.com/steve-ells/chipotle-gmos-no_b_4063994.html.
[21] See Chipotle Starts Labeling GMO Ingredients on Website Menu; A "Food Babe Investigates" Win – Chipotle Posts Ingredients.
[22] Chipotle Is Saying No To GMOs. Here's Why.
[23] See Stephanie Strom, Chipotle to Stop Using Genetically Altered Ingredients, The New York Times (Apr. 26, 2015), http://www.nytimes.com/2015/04/27/business/chipotle-to-stop-servinggenetically-altered-food.html?_r=0; Jana Kasperkevic, Chipotle removes all GMO ingredients from its menu, The Guardian (Apr. 27, 2015, 12:09 PM), http://www.theguardian.com/business/2015/apr/27/chipotle-gmo-food-off-the-menu.

doesn't mean it has to be made with cheap raw ingredients, highly processed with preservatives and fillers and stabilizers and artificial colors and flavors."[24]

23.     Chipotle's announcement was a strategic marketing campaign to entice new health-minded consumers and retain current ones. As Phil Lampert noted in his April 28, 2015 Forbes' article, "Chipotle's Non-GMO Policy Changes Everything," "Chipotle's move will no doubt attract new customers to the chain's restaurants and most likely bring in an entirely new customer base, not for the food, but because they align with the chain's ethical positions. Some will like the food and come back for more."[25]

24.     In an April 30, 2015 article for New York Magazine, Jesse Singal pointed out that Chipotle would "score points" by advertising that it was "ditching" GMOs:

> Most consumers aren't going to carefully analyze the scientific consensus on a given issue – who has time for that? Rather, they use mental shortcuts, taking cues from people and institutions they trust. Chipotle has developed a reputation for corporate responsibility and making careful decisions about the ingredients on its menu, and Chipotle ditched GMOs — therefore, GMOs must be bad. Chipotle scores points, science loses.[26]

25.     On billboards and in its marketing and advertising, Chipotle declared that its Food Products are made from "non-GMO ingredients." Chipotle also took to social

---

[24] Id.

[25] Phil Lempert, Chipotle's Non-GMO Policy Changes Everything, Forbes (Apr. 28, 2015, 3:24 PM), http://www.forbes.com/sites/phillempert/2015/04/28/chipotles-non-gmo-policychanges-everything/.

[26] Jesse Singal, Chipotle Is Promoting Opportunistic Anti-Science Hysteria, New York Magazine (Apr. 30, 2015, 1:12 PM), http://nymag.com/scienceofus/2015/04/chipotle-is-promoting-antiscience-hysteria.html.

media, announcing to its 684,000 followers on Twitter that: "We're now making all of the food at our US restaurants with only non-GMO ingredients."[27]

26.     In another tweet, Chipotle noted that it was "literally dropping" the letters G, M, and O from their menu, including taking out the "O" in "Chicken Burrito," thus representing that its chicken burrito does not have any GMO ingredients—even though Chipotle knew that its meat products come from animals that consume GMO feed:



27.     In Chipotle's "A Farewell to GMOs" billboard advertisement of a taco laced with cheese, it represented that it replaced all of its ingredients "with non-GMO ingredients" and that "all" of Chipotle's "food is non-GMO":

---

[27] See @ChipotleTweets, Chipotle,
https://twitter.com/ChipotleTweets/status/592793417652039680 (last accessed Aug. 10, 2015).



28.     In another advertisement, Defendant represented that its Food Products are "made with no-GMO ingredients":



29.     On store fronts, Chipotle advertised "A Farewell to GMOs," noting that "[w]hen it comes to our food, genetically modified ingredients don't make the cut":



30.     Indeed, Defendant advertises and represents on its in-store billboards that it uses "only NON-GMO ingredients," representing to consumers that all of its ingredients, including its flour and corn tortillas, and its cooking oil, plus meat "raised without antibiotics or added hormones" and its "pasture-raised dairy" products, do not contain any GMOs:

31.     Defendant's nationwide advertising campaign for its Food Products has been extensive and comprehensive throughout the Class Period. Defendant has spent tens

of millions of dollars conveying to consumers throughout the United States its deceptive message that Chipotle's Food Products use "only NON-GMO ingredients" and that "all" of its Food Products are "non-GMO." Plaintiff at all pertinent times herein understood defendant's representation that it was "GMO free" and 'GMO over it' to mean not only that the specific ingredients used by Chipotle did not contain GMOs, but also that those ingredients came from cattle not fed with GMO products.

32.    As a result of Chipotle's deceptive and misleading messages and omissions about its Food Products, conveyed directly through its marketing and advertising campaigns, it has been able to charge consumers a significant price premium for its Food Products over other fast-food restaurants by convincing consumers to pay for a purportedly superior product, as its advertising and marketing misleadingly convey.

### III.    Defendant's False, Misleading and Deceptive GMO Free Claims

33.    Chipotle's false and misleading representation to consumers claiming that its Food Products do not have GMOs, such as its tortillas, cooking oil, and corn chips, and its omissions regarding the GMOs used in certain of the meat and dairy ingredients it uses in its Food Products, have been, and continue to be, material to consumers, including Plaintiff and other members of the putative class, and Defendant knows that its misleading representations are material in nature. Were the presence of GMOs in food, and in the feed given to animals yielding food products not material to consumers Chipotle would not focus its marketing and advertising to claim that it is the first GMO-free fast-food restaurant, and Chipotle would not be able to charge customers premium prices for its purportedly "non-GMO" Food Products.

34.     However, as food writer Julie Kelly points out, "[t]he company's holier-than-thou PR move proclaiming 'Food with Integrity' struck me as the ultimate cynical marketing tactic: feign integrity while you mislead customers to believe that your food is GMO-free when it's not."[28]

35.     In reliance upon Chipotle's prominently displayed ad campaign, including but not limited to seeing all of the storefront and in-store billboards and signs used by Chipotle at its downtown location, to utilize "Only NON-GMO Ingredients", Plaintiff understood the ads to mean that chipotle's menu items did not contain GMOs, were not sourced from animals that were raised on GMO feed, did not use GMO processing aids in food preparation, and were otherwise certified as non-GMO under industry standards.  As a result of this understanding, Plaintiff made multiple purchases at the Chipotle located at 101 West Broadway San Diego, CA 92101. These purchases include, but are not limited to the following:

1.   On 5/26/15, Plaintiff purchased a meal at Chipotle in the amount of $9.45. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with side of corn tortilla chips.

2.   On 6/24/15, Plaintiff purchased a meal at Chipotle in the amount of $10.48. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

---

[28] Julie Kelly, Why Whole Foods and Chipotle's anti-GMO campaigning has lost my business, Genetic Literacy Project (July 6, 2015), http://www.geneticliteracyproject.org/2015/07/06/whywhole-foods-and-chipotles-anti-gmo-campaigning-has-lost-my-business/; see also Sarah Zhang, Chipotle's Anti-GMO Stance Is Some Anti-Science Pandering Bullshit, Gizmodo (Apr. 27, 2015, 3:18 PM), http://gizmodo.com/chipotles-anti-gmo-stance-is-some-pandering-bullshit-1700437048.

3.  On 7/13/15, Plaintiff purchased a meal at Chipotle in the amount of $10.69. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

4.  On 7/16/15, Plaintiff purchased a meal at Chipotle in the amount of $9.34. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

5.  On 7/23/15, Plaintiff purchased a meal at Chipotle in the amount of $9.34. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

6.  On 7/28/15, Plaintiff purchased a meal at Chipotle in the amount of $9.45. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

7.  On 8/07/15, Plaintiff purchased a meal at Chipotle in the amount of $4.27. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

8.  On 9/03/15, Plaintiff purchased a meal at Chipotle in the amount of $6.97. Plaintiff believes the meal she purchased to be a combination of one to three meat and cheese only tacos on flour tortillas with a side of corn tortilla chips.

36.  Plaintiff is informed and believes and based thereon alleges that all of the food she purchased as set forth above either contained GMO ingredients, or was a meat or dairy product, raised, at least in part, from cattle fed on GMO ingredients.  On average, Plaintiff spent about $5 more per meal at Chipotle than she would have at a similar food store, such as Taco Bell, that did not advertise their food contained "Only NON-GMO

ingredients." Plaintiff chose to purchase food at the more expensive Chipotle due to her belief that it contained "only NON-GMO Ingredients", unlike Taco Bell, which does not make any such claims.

37.     Defendant's advertising and marketing claims that its Food Products are made with "only NON-GMO ingredients" and that "all" of its Food Products are "NON-GMO" are/were false, misleading, deceptive, unfair and/or unconscionable because Chipotle utilizes, or utilized during the class period, GMO corn, and meat and dairy products from animals that consume genetically modified food.

38.     There is an ongoing debate as to the effect on meat from animals that have been fed GMO feed. While some researchers say that there is no effect on the meat from the animals, other researchers have found the opposite to be true. A long-term, peer-reviewed study conducted by a group of scientists led by Dr. Judy Carman of the Institute of Health and Environmental Research in Australia was released in 2013 that found there to be serious health issues in animals fed GMO feed.[29] This study found that animals fed GMO feed experienced several adverse effects, including reproductive and digestive disorders as a result of the genetically modified feed. In the study, pigs and cows were fed with GMO corn and soy products. Half of the pigs in the study were fed GM feed, (the GM-fed group), and the other half were fed non-GM feed, (the control group).   Dr. Carmen explains her methodology for conducting the study as follows:

[29] Judy A. Carmen. A long-term toxicology study on pigs fed a combined genetically modified (GM) soy and GM maize diet. http://www.organic-systems.org/journal/81/8106.pdf. (March 19, 2016, 10:00 AM); See also Christina Sarich. First Long Term Study Released on Pigs, Cattle Who Eat GMO Soy and Corn Offers Frightening Results. (June 27, 2013). http://www.nationofchange.org/first-long-term-study-released-pigs-cattle-who-eat-gmo-soy-and-corn-offers-frightening-results-13723. (March 19, 2016, 10:00 AM).

At a commercial piggery in the US, we took 168 just-weaned pigs and fed them a typical diet for the piggery, containing soy and corn, for 22.7 weeks (over 5 months) until the pigs were slaughtered at their usual slaughter age. Half of the pigs were fed widely-used varieties of GM soy and GM corn (the GM-fed group) for this whole period, and the other half of the pigs were fed an equivalent non-GM diet (the control group). The GM diet contained three GM genes and therefore three GM proteins. One protein made the plant resistant to a herbicide, and two proteins were insecticides.

39.     All of the pigs fed the GMO feed experienced adverse effects and developed adverse health conditions that the control group did not. The GMO-fed group were found to have several pathologies as a result of the GMO-feed including but not limited to the following: Carcinoma, inflammation of the stomach and small intestine, stomach ulcers, reduced ability to procreate, increase in hemorrhaging bowels, enlarged uteri, reproductive issues, and endometritis among other serious conditions.

40.     Another study conducted by Gilles-Éric Séralini found that rats that were fed GMO-feed developed chronic kidney deficiencies, large mammary tumors, hormone imbalances and other adverse effects.[30]  The study concluded that "our findings imply that long-term (2 year) feeding trials need to be conducted to thoroughly evaluate the safety of GM foods and pesticides in their full commercial formulations."

41.     Conversely, there are other studies that claim that there is no effect on an animal whether it is fed GMO or Non-GMO feed.  A study conducted by University of

---

[30] Gilles-Eric Séralini. Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize. (June 24, 2014.) http://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5. (March 9, 2016. 10:00 a.m.)

California-Davis Department of Animal Science geneticist Alison Van Eenennaam and research assistant Amy E. Young concluded that GMO feed was safe to feed animals and furthermore, there was no adverse effects on humans that eat meat from animals that have been fed GMO-feed.[31]

42.     What is clear from these studies is that there is an ongoing debate as to the effect of GMO-feed on animals. Plaintiff is informed and thereon believes that as a result of this ongoing debate, the general public is concerned about the use of GMO crops and the thought of consuming meat from animals that have consumed genetically modified feed. A recent broadcast by ABC News stated that "the public debate and concern over GMO foods shows no sign of easing."[32] According to the broadcast, "It's a common refrain among consumers who often admit they only dimly understand what scientists have been doing to modify the food we eat and the crops we feed to animals, which many of us eat." Plaintiff is informed and thereon believes that this growing concern over the use of GMO foods is why it's so important that GMO foods be labeled properly and truthfully. This is why regarding GMO foods, The Institute of Health and Environmental Research Inc. suggests that "there is an urgent need for the full labeling of GM foods,

---

[31] Jon Entine. What happens when 100 billion animals, over 18 years, eat GMOs? (September 19, 2014.) Forbes. https://www.geneticliteracyproject.org/2014/09/19/what-happens-when-100-billion-animals-over-18-years-eat-gmos/ (March 10, 2016. 10:00 a.m.)
[32] Dave Marquis. Genetic engineering pushes new frontiers as GMO food debate still rages.  (January 26, 2016.) ABC 10 News. http://legacy.abc10.com/story/news/local/california/2016/01/26/genetic-engineering-pushes-new-frontiers-gmo-food-debate-still-rages/79335140/ (March 10, 2016. 12:00 p.m.)

comprehensive safety testing by independent researchers of all GM foods currently in the marketplace and of all subsequent GM foods before they enter the marketplace."[33]

43      Chipotle claims that it no longer uses any GMO ingredients.  Chipotle concedes in disclaimers located on its website, but not in its stores or advertising campaigns, that its meat and dairy supplies come from animals fed with GMO grains.[34] Contrary to its advertising campaign and in-store signage, Chipotle's ingredient list on its website provides, "there is currently not a viable supply of responsibly raised meats and dairy from animals raised without GMO feed."[35] Chipotle only discloses this information on its website, because it knows its fast-food customers never need to visit Chipotle's website to buy food, and are highly unlikely to seek out this information when simply deciding where to purchase lunch or dinner. Rather, reasonable consumers are likely to rely on Chipotle's internet, mass media, and in-store advertising to choose Chipotle over its competitors.

44.     Noting that "Chipotle's advertising is purposefully misleading" and pointing out that Chipotle "admits as much" on its website, Julie Kelly and Jeff Stier call out Chipotle's advertising "gimmicks" in their May 1, 2015 National Review article, "GMO: Gimmicky Marketing Obfuscations":

> So you can eat GM-free at Chipotle as long as you don't order the pork, chicken, cheese, sour cream, tortillas, or Coke. "They conveniently ignore GMO-derived ingredients when they don't have alternatives or it doesn't serve profits," said Kevin Folta, chair of the Horticultural Sciences Department at the University of Florida. "It is corporate deception in the

---

[33] Is GMO Food Safe to Eat? Iher Australia. (June 18). http://www.iher.org.au/is-gm-food-safe-to-eat/ (March 9, 2016 10:00 a.m.)
[34] Food With Integrity, G-M-Over It.
[35] See Ingredient Statement, Chipotle, http://chipotle.com/ingredient-statement (last accessed Aug. 25, 2015).

name of a buck and anti-GMO deception in the name of ideology." So much for food with integrity.[36]

45.      No billboard or in-store advertisement indicates that Chipotle's Food Products, such as its tortillas, corn chips, have, or had during the class period, ingredients containing GMOs, even though Defendant's Food Products are or were made with ingredients containing GMOs during the class period, and nowhere does Chipotle disclose in its stores that its meat and dairy products come from GMO-raised cattle.

46.      Food is considered misbranded under the Federal Food, Drug and Cosmetic Act ("FDCA") if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or labeling. See 21 U.S.C. § 343. If any representation in the labeling is misleading, the entire food is misbranded. Because Defendant has made and continues to make misleading claims that "all" of the ingredients comprising its Food Products are "NON-GMO," when the representation is false and misleading, Chipotle is in violation of the FDCA.

**IV.    Chipotle's Concealment**

47.      Defendant is, and remains under, a duty to Plaintiff and the putative class to disclose in its physical store locations and in its advertising campaigns, the facts, as alleged herein. The duty to disclose the true facts arises because, as marketer and seller, Defendant is in a superior position to know the true character and quality of its Food

---

[36] Julie Kelly and Jeff Stier, GMO: Gimmicky Marketing Obfuscations; Perhaps Chipotle should have learned from Starbucks, National Review (May 1, 2015, 5:30 PM), http://www.nationalreview.com/article/417801/gmo-gimmicky-marketing-obfuscations-julie-kellyjeff-stier; see also Tim McDonnell, Chipotle Says It's Getting Rid of GMOs. Here's the Problem., Mother Jones (Apr. 28, 2015, 4:08 PM), http://www.motherjones.com/bluemarble/2015/04/chipotle-gmos-anti-science.

Products, and the true facts are not something that Plaintiff and the putative class members could be reasonably expected to have discovered by undertaking research independently prior to purchase.

48.     The facts concealed and/or not disclosed to Plaintiff and the Class, specifically that consumers are/were not consuming "only NON-GMO ingredients," including corn and soy products, and meat products harvested from cattle fed with GMO ingredients, are material facts, in that a reasonable person would have considered them important in deciding whether or not to purchase (or pay the same price for) a Chipotle Food Product.

49.     Defendant intentionally concealed, and/or failed to disclose to consumers, in its store locations, and through its advertising campaigns, that not all of the ingredients Chipotle uses in its Food Products are/were GMO-free, and that, in addition, its meat and dairy products come from animals fed GMOs for the purpose of inducing Plaintiff and putative class members to act thereon.

50.     Plaintiff and the putative class members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their purchase of Chipotle's Food Products. Had they known of the true character and quality of the ingredients used in Chipotle's Food Products, and the fact that its meat and dairy products were derived from GMO-fed animals, Plaintiff and the putative class members would not have purchased (or would have paid less for) such products.

51.     As a direct and proximate cause of Chipotle's misconduct, Plaintiff and the putative class members have suffered actual damages.

///

## **CLASS ACTION ALLEGATIONS**

52.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following class (the "Class"):

> All persons who purchased, between April 27, 2015 and the present, Chipotle Food Products, in California, which contain GMO products, or meat or dairy products derived from animals which were fed GMO products, and who did not review the disclosures on defendant's website relative to its GMO product sales prior to purchase.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

53.     The Class is so numerous that joinder of all members is impracticable. Though the exact number and identities of Class members are unknown at this time, Defendant's sales as of December 31, 2014 resulted in revenues of $1.07 billion. Moreover, Defendant has over 1,780 restaurants, with 325 restaurants in California alone. Based on these figures, it appears that the membership of the Class is in the tens of thousands.

54.     Common questions of law and fact exist as to all Class members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

Whether Defendant engaged in deceptive and unfair business and trade practices alleged herein;

(a) Whether Defendant knowingly concealed or omitted material information concerning the ingredients in its Food Products in some of it's ad campaigns and in it's ads displayed in Chipotle stores;

(b) Whether Defendant falsely and deceptively misrepresented in its advertisements and promotional materials, and other materials, that all of its Food Products were made with "Only NON-GMO ingredients";

(c) Whether Defendant represented that its Food Products and their ingredients have characteristics, uses, benefits, or qualities that they do not have;

(d) Whether the Class has been injured by virtue of Defendant's unfair and/or deceptive business practices and conduct; and

(e) Whether Class members that purchased Defendant's Food Products suffered monetary damages and, if so, what is the measure of those damages.

55.    Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class has suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests adverse to the interests of the other members of the Class.

56.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class actions and complex litigation as their counsel.

57.     Plaintiff and other members of the Class have suffered damages as a result of Chipotle's unlawful and wrongful conduct. Absent a class action, Chipotle will retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendant will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

58.     Plaintiff avers that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

## CLAIMS FOR RELIEF

## COUNT I

**(Violation of the California Consumer Legal Remedies Act,
Cal. Civil Code §§ 1750, et seq.)**

59.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

60.     The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, et seq., was designed and enacted to protect consumers from unfair and

deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

61.     The CLRA applies to Defendant's actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

62.     At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

63.     The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family, or household purposes within the meaning of Civil Code section 1761.

64.     Chipotle's practices in connection with the marketing and sale of its Food Products violate the CLRA in at least the following respects:

(a) In violation of section 1770(a)(5), Defendant knowingly misrepresented the character, ingredients, uses and benefits of the ingredients in its Food Products;

(b) In violation of section 1770(a)(7), Defendant represented that the ingredients in its Food Products are of a particular standard, quality or grade, which they are not; and

(c)  In violation of section 1770(a)(9), Defendant knowingly advertised its Food Products with the intent not to sell the products as advertised.

65.     Chipotle represents that all of its Food Products contain "only NON-GMO ingredients" and omits to disclose that some its Food Products contain GMO ingredients, and that other ingredients are derived from GMO fed cattle, in order to convey to consumers that they are obtaining a product that provides more benefit for consumers than

other restaurants which offer similar or substantially similar food products. Plaintiff is informed and believes and on that basis alleges that these representations are false and misleading in that one or more of the ingredients composing Chipotle's Food Products do contain GMOs, and the remainder are derived from GMO fed cattle.

66.     Defendant's acts and practices, undertaken in transactions intended to result, and which did result, in the purchase of its Food Products by consumers, violate Civil Code section 1770 and caused harm to Plaintiff and Class members who would not have purchased (or paid as much for) its Food Products had they known the truth. The acts and practices engaged in by Defendant that violate the CLRA include inducing Plaintiff and the Class to purchase (or pay more for) its Food Products than they would otherwise have paid had they known the truth.

67.     Plaintiff was injured by purchasing (or overpaying for) Chipotle's Food Products.

## COUNT II
**(Violation of California False Advertising Law,
Cal. Bus. & Prof. Code §§ 17500, et seq.)**

68.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

69.      Each of the above misleading advertising practices of Chipotle set forth above constitutes untrue or misleading advertising under the California False Advertising Law ("FAL"), California Business & Professions Code section 17500, et seq.

70.     At all material times, Defendant's marketing materials misrepresented or omitted to state that Defendant's Food Products contain ingredients that have GMOs

and/or that some of its food products are derived from GMO fed cattle. Chipotle's acts and practices have deceived and/or are likely to deceive members of the Class and the public.

71.    Defendant is disseminating marketing and advertising concerning its Food Products, which by its nature is unfair, untrue, deceptive, or misleading within the meaning of California Business & Professions Code section 17500, *et seq*. Such advertisements are likely to deceive, and in fact have deceived plaintiff and the class.

72.    In making and disseminating the statements alleged herein, Chipotle should have known its advertisements were untrue and misleading. Plaintiff and members of the Class based their decisions to purchase Chipotle Food Products in substantial part on Defendant's misrepresentations and omitted material facts, and have been injured thereby.

## COUNT III
### (Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.)

73.    Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

74.    Defendant has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, et seq., because Defendant's conduct is unlawful, misleading and/or unfair as herein alleged.

75.    Chipotle's business practices are unlawful because they violate the CLRA, FDCA, and FAL.

76.    Chipotle's business practices are misleading because they were likely to deceive consumers into believing that they are obtaining a product that provides more

benefit and is safer to consumers than other restaurants which offer similar, or substantially similar, food products.

77.     Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice, in that Defendant omits to disclose material information about its products and, as such, consumers are led to believe that the products they were paying for had qualities that it did not have.

78.     Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased Chipotle's Food Products (or paid as much for it) had she known the truth.

79.     Plaintiff and the Class are entitled to relief, including full restitution and/or restitutionary disgorgement, to the greatest extent permitted by law, which may have been obtained by Defendant as a result of such business acts or practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class, prays for relief as follows:

A.     For an Order certifying this case as a class action against Chipotle and appointing Plaintiff as Representative of the Class;

B.     Awarding monetary and actual damages and/or restitution, as appropriate;

C.     Awarding all costs, including experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and for

D.      Such other and further relief as the Court may deem just and proper.

### **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: May 31, 2016               The Law Offices of Stephen B. Morris

                               By:  /s/ Stephen B. Morris
                               Stephen B. Morris,
                               Attorney for Plaintiff and the putative class